# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JIMMIE LEE JONES, JR.**

      **Petitioner,**

                                          **Case No. 1:04-cv-249**

**v.**                                          **Hon. Gordon J. Quist**

**PAUL H. RENICO**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at the Michigan Department of Corrections (MDOC), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

Petitioner's three felony convictions arose from the assault of his wife on May 17, 2000. By way of background, on November 7, 1999, the Kalamazoo Circuit Court issued an ex parte Personal Protection Order (PPO) in favor of the victim and against petitioner. *See* PPO, *Jones v. Jones*, Kalamazoo Cir. Ct. No. E 99-007517PP (docket no. 20). Although petitioner claimed that he did not receive a copy of the PPO, a proof of service stated that he was served on November 21, 1999 at 9:16 a.m.. *See* PPO Hearing Trans. at 7-9 (May 18, 2000) (docket no. 20) ("PPO Trans. I"). In addition, the victim testified that she told petitioner about the PPO shortly after obtaining it, that petitioner asked her to withdraw it, and she refused. Trial Trans. III. at 365. The victim testified that she did not feel safe without the PPO, because of previous incidents in which petitioner choked her, tore up her house and assaulted her. *Id.* at 367.

The PPO prohibited petitioner "from entering onto the premises of [the victim]; from assaulting, beating, molesting or wounding [the victim]; from appearing at the work place or at the home; and from contacting her by telephone." PPO Hearing Trans.at 49 (June 1, 2000) (docket no. 10) ("PPO Trans. II"). Petitioner was arrested for violating the PPO on May 15, 2000 and pled guilty to that violation. *Id.* at 25; PPO Trans. I at 4. The court served petitioner with another copy of the PPO on May 16, 2000 at his plea hearing. PPO Trans. II at 49.

The next day, petitioner was arrested for violating the PPO. *See* PPO Trans. I. His conduct on that date gave rise to felony charges, *People v. Jones*, Eighth Dist. Court No. 00-06964 FY, Kalamazoo Circuit Court No. B 00-0617 FC . *See* Prel. Exam. Trans. (docket no. 9). After a preliminary examination held on May 31, 2000, the district court bound petitioner over to the Kalamazoo Circuit Court on three felony charges of aggravated stalking, first degree home invasion and assault with intent to murder. *Id.* at 37-40. With respect to the aggravated stalking charge, the court found that petitioner's actions on May 15th and 17th were repeated conduct that would cause a reasonable person to be terrorized, frightened, intimidated or threatened. *Id.* at 37-38. In this regard, the judge noted that the victim changed the locks on the house on May 16th. *Id.* at 39. With respect to the home invasion charge, the court found that petitioner entered the home without permission and that the victim was present at that time. *Id.* Finally, with respect to the charge of assault with intent to murder, the court found that petitioner assaulted the victim and made statements on both May 15th and 17th that he was going to kill the victim. *Id.* at 39-40.

At a hearing held on June 1, 2000, the court found that petitioner violated the PPO on May 17th as follows:

> [Petitioner] appears at the residence of [the victim], in violation of the order; he telephoned her in violation of the order; he assaulted her in violation of the order.

2

> The standard of proof here, since this is a criminal contempt, it is proof beyond a reasonable doubt.  [Petitioner] doesn't even deny that all of these events occurred. But we had a hearing, in any event.
>
> What distinguishes this particular hearing from the underlying criminal charges that I understand are pending are this, there is an additional element in connection with a violation of Personal Protection Order and that additional element is that there has to be a Personal Protection Order that has been served on [petitioner].  So, in the criminal cases that are currently pending, that is an element that is not present.
>
> So, from all of this evidence here, I find beyond a reasonable doubt, that [petitioner] has violated the Personal Protection Order on May 17th, 2000, in the City of Kalamazoo.  He violated it in three different manners, at least.  One by telephoning the protected party; secondly by coming to the property; third by assaulting, beating and wounding [the victim].  So, [petitioner] is guilty of violating the Personal Protection Order.

PPO Trans. II at 49-50.  The judge sentenced petitioner to the maximum penalty of 93 days in the county jail.  *Id.* at 50.

The government subsequently prosecuted petitioner on the three felony charges. Following a jury trial held in January 2001, petitioner was convicted of one count each of assault with intent to commit murder, M.C.L. § 750.83, first-degree home invasion, M.C.L. § 750.110a(2), and aggravated stalking, M.C.L. § 750.411i. Petition at 2. Petitioner was sentenced to concurrent prison terms of twenty (20) to forty (40) years for the assault conviction, ten (10) to twenty (20) years for the first-degree home invasion conviction, and five (5) to ten (10) years for the aggravated stalking conviction on January 15, 2001. *Id.*

Petitioner's counsel raised two issues in his direct appeal to the Michigan Court of Appeals:

I.      [Petitioner's] convictions should be reversed because there was insufficient evidence to find for the conviction of assault with intent to murder.

II.     [Petitioner's] convictions should be reversed because there was insufficient evidence to find for the conviction of first degree home invasion.

Petition at ¶ 9. Petitioner raised three additional grounds in a supplemental pro per brief:

I.      [Petitioner] was deprived of his liberty without due process of law where he was charged, tried and/or convicted on criminal charges: A. Assault with intent to murder; B. First degree home invasion; and C. Aggravated stalking, in the same transaction, same act, in violation of the Double Jeopardy Clause.

II.     Whether this prosecution was barred by collateral estoppel.

III.    Whether or not the Kalamazoo Circuit Court had proper jurisdiction to bring criminal charges that arose from a simple misdemeanor action in district court.

Petition at ¶ 9. The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Jimmy Lee Jones*, No. 232864 (Mich. App. Jan. 14, 2003) (per curiam).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court, which raised the five issues above. Petition at ¶ 9. The Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Jimmy Lee Jones*, No. 123383 (Mich. July 28, 2003).

In his habeas corpus petition, petitioner states five issues as grounds for habeas relief:

I.      Petitioner is entitled to a writ of habeas corpus because there was insufficient evidence to find for the conviction of assault with intent to murder.

II.     Petitioner is entitled to a writ of habeas corpus because there was insufficient evidence to find for the conviction of first degree home invasion.

III.    Petitioner is entitled to a writ of habeas corpus because petitioner was deprived of his liberty without due process of law where he was charged, tried and/or convicted on criminal charges of: A. Assault with intent to murder; B. First degree home invasion; and C. Aggravated stalking, in the same transaction, same act, in violation of Double Jeopardy Clause [of U.S. Const. Am. V].

IV.     Petitioner is entitled [to] a writ of habeas corpus because the prosecution was barred by collateral estoppel since an adverse judgment was entered in a prior proceeding on the same factual predicates.

V.      Petitioner is entitled to a writ of habeas corpus because the Kalamazoo Circuit Court did not have proper jurisdiction to bring criminal charges that arose from a simple misdemeanor action in district court.

Petition at ¶ 12.[1]

## II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his habeas claim.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by 28 U.S.C. § 2254(d), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

---

[1] In his "supplemental reply," petitioner contends that there is insufficient evidence to support his conviction for aggravated stalking pursuant to MCL § 750.411i.  This issue is not raised in the petition. Accordingly, the court will not address this argument.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342, *citing Williams*, 529 U.S. at 412-13.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.     Sufficiency of the Evidence

### A.     Assault With Intent to Murder

Petitioner contends that his conviction for assault with intent to murder is not supported by constitutionally sufficient evidence. Evidence is sufficient to support a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (emphasis added).  The reviewing court must presume that the trier of fact

resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.

*Wright v. West*, 505 U.S. 277, 296-97 (1992).

The Michigan Court of Appeals addressed the sufficiency of the evidence for

petitioner's conviction for assault with intent to murder as follows:

> The elements of assault with intent to commit murder are: "(1) an assault, (2)
> with an actual intent to kill, (3) which, if successful, would make the killing murder."
> *Hoffman, supra,* 225 Mich.App 111. Here, defendant argues that there was
> insufficient evidence of his intent to murder. We disagree. The element of intent may
> be proved by inference from any facts in evidence. *People v. McRunels,* 237
> Mich.App 168, 181; 603 NW2d 95 (1999). "Because of the difficulty of proving an
> actor's state of mind, minimal circumstantial evidence is sufficient." *Id.*
>
> The evidence indicated that defendant threatened to kill the victim two days
> before the assault. Also, before the assault on May 17, 2000, the victim's telephone
> lines were disabled. When defendant broke open the front door of the victim's house,
> he informed her that he was there to kill her. He thereafter tried to push her into her
> bedroom, which had a lock on the door. He was unable to do so. However, he
> repeatedly punched her in the face. After the victim managed to leave the house,
> defendant followed her and continued the assault, kicking and stomping on her head
> and face. He stopped for a short time when employees from Root Spring Scraper
> yelled at him. He then resumed the assault, which ended only after a neighbor pulled
> defendant off of the victim, enabling the victim to escape to safety. While the victim
> did not suffer serious injury, medical testimony established that the head and neck
> are the most vulnerable areas of the body and that a pounding assault to those areas
> could cause death. Viewing the evidence of defendant's statements and conduct in
> a light most favorable to the prosecution, a rational trier of fact could determine that
> the element of intent to murder was proved beyond a reasonable doubt. See, e.g.,
> *McRunels, supra* 237 Mich.App 181-182.

*People v. Jones*, No. 232864 at *1.

Petitioner concedes that an assault took place, but contests the element of intent.

Petitioner claims that "the evidence presented showed while his actions demonstrated he may [have]

formed an intent to inflict great bodily harm on complainant, he did not have the specific intent to

kill." Petition at ¶ 12.

7

First, petitioner contends that he lacked the actual intent to commit murder because the victim attacked him with a knife and he acted in self defense. *See* Attachment C to Petition. The trial court instructed the jury on petitioner's claim of self defense. *See* Trial Trans. V at 775-76. The jury rejected this defense and convicted petitioner. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Petitioner does not allege any federal constitutional violation arising from the jury's rejection of his self-defense claim. Accordingly, there is no basis for the court to address this issue on federal habeas review.

Next, petitioner claims that his actions did not demonstrate the requisite intent to murder the victim. Petitioner does not deny that he assaulted the victim, stating that "while his actions demonstrated he may [have] formed an intent to inflict great bodily harm on [the victim], he did not have the specific intent to kill." *See* Attachment C to Petition. Petitioner states that he fought with the victim "both inside and outside the residence;" that "[t]he fight lasted no more than five minutes;" that "[s]everal children were unable to stop the fighting;" that the victim "was able to run across the street and talk to others;" that "[w]hile bleeding, [the victim] was coherent;" and that "[a]fter [the victim] was conveyed to the hospital, she was looked at by a doctor." Petition at Attachment C. Petitioner further states that "while she suffered from a laceration, bruises, and contusions, those injuries, while serious, would not have resulted in her death, even if they had been left unattended." *Id.*

Contrary to petitioner's contention, assault with intent to kill does not require that a victim receive fatal injuries. Neither death nor injury is an element of assault with intent to

8

commit murder under M.C.L. 750.83. *People v. Lowery*, 258 Mich. App. 167, 174, 673 N.W.2d 107

(2003). In *Warren v. Smith*, 161 F.3d 358 (6th Cir. 1998), the Sixth Circuit outlined the elements

of this crime:

> In Michigan, the crime of assault with intent to commit murder requires proof
> of three elements: (1) an assault, (2) with an actual intent to kill, (3) which, if
> successful, would make the killing murder. The second element, the intent to kill,
> does not equate with murder. Thus, an intent to kill for purposes of this offense may
> not be proven by an intent to inflict great bodily harm or a wanton and wilful
> disregard of the likelihood that the natural tendency of the acts will likely cause
> death or great bodily harm. The specific intent to kill may be proven by inference
> from any facts in evidence. In determining intent, we may take into consideration
> the nature of the defendant's acts constituting the assault; the temper or disposition
> of mind with which they were apparently performed, whether the instrument and
> means used were naturally adapted to produce death, his conduct and declarations
> prior to, at the time, and after the assault, and all other circumstances calculated to
> throw light upon the intention with which the assault was made.

*Warren*, 161 F.3d at 361 (citations, internal quotations and footnote omitted).

Here, the Michigan Court of Appeals determined that petitioner exhibited the intent

to murder the victim because he: threatened to kill the victim two days before the assault; broke open

the front door of the victim's house; informed the victim that he was there to kill her; repeatedly

punched the victim in the face; kicked and stomped the victim's head and face when she managed

to leave the house; and, continued to assault the victim until a neighbor pulled him off of her. *Jones*,

No. 232864 at *1. In addition, the victim's telephone lines were disabled before the assault. Viewed

in the light most favorable to the prosecution, a rational trier of fact could have found petitioner

guilty of the offense beyond a reasonable doubt.

The Michigan Court of Appeals' resolution of the issue was neither contrary to, nor

an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

###    B.    First-Degree Home Invasion

Next, petitioner contends that there is insufficient evidence to support his conviction for first-degree home invasion. The Michigan Court of Appeals addressed the issue as follows:

> Defendant next argues that the evidence was insufficient to support his conviction for first-degree home invasion. Again, we disagree. The plain language of M.C.L. § 750.110a(2) sets forth the following elements: (1) that the defendant broke and entered into the dwelling or entered the dwelling without permission; (2) that when the defendant did so, he either intended to commit a felony, larceny or assault or actually committed a felony, larceny or assault while entering, exiting or present in the dwelling; and (3) that when the defendant entered, was present in, or was leaving the dwelling, he was armed with a dangerous weapon or another person was lawfully in the dwelling. The term "without permission" is defined as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." MCL 750.110a(1)(c). Further, "any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *People v. Toole,* 227 Mich.App 656, 659; 576 NW2d 441 (1998).

> The victim testified that defendant did not have permission to enter the home. In addition, there was evidence that defendant was aware of an existing personal protection order (PPO), because he was arrested for violating the PPO on May 15, 2000. A person has no right to enter his home in violation of a restraining order. *People v. Pohl,* 202 Mich.App 203, 205; 507 NW2d 819 (1993). Further, there was evidence that defendant used force to enter the home. The victim testified that she heard two loud bangs at the front door. When she turned, she saw defendant in the house. The front door, which was previously locked, was wide open. There was also damage to the door, the lock, and the wall adjacent to the door frame, that was not present before the two loud bangs. Viewed most favorably to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant not only entered without permission, but that he committed a breaking and entering.

> The evidence also supported an inference that defendant entered the dwelling with the intent to commit a felony assault and actually committed an assault after entering. When defendant entered the house, he stated that he was there to kill her. He then punched her in the face several times before she managed to exit the dwelling. Additionally, while there was no evidence that defendant was armed with a weapon, M.C.L. § 750.110a(2) provides that first-degree home invasion occurs if

the person is *either* armed with a dangerous weapon *or* if "[a]nother person is lawfully present in the dwelling." There is no dispute that the victim and her children were lawfully present in the dwelling when defendant entered.

*Jones*, No. 232864 at *2.

Petitioner contends that there is conflicting evidence that he broke into the home, and no evidence that he entered the residence with the intent to commit a felony therein or that he was armed with a weapon. Petition at Attachment C. First, petitioner's contention acknowledges the existence of conflicting evidence on the first element of the offense, i.e., whether he entered the victim's home without permission. The existence of conflicting evidence does not aid petitioner. The court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright*, 505 U.S. at 296-97. Here, the jury resolved the conflicting evidence against petitioner. The court must defer to that resolution.

Second, petitioner states that there is no evidence that he entered the residence with the intent to commit a felony. The Michigan Court of Appeals noted that when petitioner entered the residence, he told the victim that he was there to kill her and then punched her in the face. This evidence is sufficient to show that petitioner entered the residence with the intent to commit a felony.

Third, contrary to petitioner's contention, a conviction for first degree home invasion does not require that the perpetrator possess a weapon. The statute provides in pertinent part that:

[a] person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling . . . is guilty of home invasion in the first degree if either of the following circumstances exist:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

11

M.C.L. § 750.110a(2).   Even if petitioner was not armed with a dangerous weapon, the evidence supports the alternative element of establishing the offense, because the victim and her children were present when petitioner entered the residence.   Viewed in the light most favorable to the prosecution, a rational trier of fact could have found petitioner guilty of first degree home invasion beyond a reasonable doubt.

The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d).   Accordingly, petitioner is not entitled to habeas relief on this claim.

### III.   Double Jeopardy

Next, petitioner contends that he was deprived of his liberty without due process of law when he was charged and convicted of the "same [criminal] elements" twice - once in the PPO contempt hearing and once at his trial. *See* Attachment C to Petition.   The Fifth Amendment Double Jeopardy Clause protects against "successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28 (1998). In order to decide whether a second prosecution under different statutes would place a defendant in double jeopardy under the "same offense prong," the court applies the "*Blockburger* test," to determine whether each statutory offense requires a proof of fact not contained in the other. *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Palazzolo v. Gorcyca*, 244 F.3d 512, 519 (6th Cir. 2001). The double jeopardy bar applies in both the multiple punishment and multiple prosecution contexts

"where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test." *Dixon*, 509 U.S. at 696.  The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696.

The Michigan Court of Appeals applied the *Blockburger* test to determine that the offense of violating a PPO contained different elements from the felonies:

> Defendant next argues that his multiple felony prosecutions violated the double jeopardy protections against multiple punishments and successive prosecutions for the same offense. He argues that because he was previously convicted of criminal contempt for violating the PPO, his subsequent prosecution for assault with intent to murder, first-degree home invasion, and aggravated stalking was precluded. We review this issue de novo because it presents a question of law. *People v. Rodriquez,* 251 Mich.App 10, 17; 650 NW2d 96 (2002).
>
> "The double jeopardy guarantee protects against multiple punishments, or successive prosecutions, for the same offense." *Rodriquez, supra,* 251 Mich.App 16-17. Neither guarantee was violated in this case. With respect to multiple punishments, the double jeopardy protection is not a limitation on the Legislature's power to fix punishments. *People v. Denio,* 454 Mich. 691, 709; 564 NW2d 13 (1997). "Thus, if the Legislature desires, it may specifically authorize penalties for what would otherwise be the 'same offense." ' *Id.,* quoting *People v. Sturgis,* 427 Mich. 392, 403; 397 NW2d 783 (1986); see also *People v. Dillard,* 246 Mich.App 163, 166; 631 NW2d 755 (2001) (noting that where the Legislature specifically authorizes cumulative punishment under two statutes, there is no double jeopardy violation).
>
> The Legislature has specifically authorized cumulative punishment for both a PPO violation and aggravated stalking, M.C.L. § 750.411i(6). *People v. Coones,* 216 Mich.App 721, 727-728; 550 NW2d 600 (1996). The Legislature has also authorized cumulative punishment for PPO violations and first-degree home invasion. Both M.C.L. § 600.2950(23) and M.C.L. § 600.2950a(20) provide that the penalty for criminal contempt for refusing or failing to comply with a PPO may be imposed in addition to other penalties that may be imposed for other criminal offenses arising from the same conduct. The first-degree home invasion statute similarly provides that "[i]mposition of a penalty under this section does not bar imposition of a penalty under any other applicable law." MCL 750.110a(9). Finally, while the assault with intent to commit murder statute, M.C.L. § 750.83, does not specifically express an intent to authorize cumulative punishment, "[s]tatutes prohibiting conduct that is violative of distinct social norms can generally be viewed

as separate and amenable to permitting multiple punishments." *People v. Lueth,* ___ Mich.App ___; ___ NW2d ___ (2002) (citation and internal quotation omitted). The PPO violation resulted in a conviction for criminal contempt. "[T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts." *In re Contempt of Auto Club Ins Ass'n,* 243 Mich.App 697, 708; 624 NW2d 443 (2000). Contempt is a crime against the court while the underlying criminal offense is a crime against the state. *People v. McCartney (On Remand),* 141 Mich.App 591, 596; 367 NW2d 865 (1985). Because the assault with intent to commit murder statute, M.C.L. § 750.83, and the statutes punishing PPO violations prohibit conduct involving different social norms, we find the crimes are amenable to multiple punishment. The double jeopardy guarantee against multiple punishments for the same offense was not violated in this case.

The double jeopardy guarantee against successive prosecutions was also not violated. There are different standards under the United States Constitution's double jeopardy provision, U.S. Const, Am V, and Michigan's double jeopardy provision, Const 1963, art 1, § 15. Under the Fifth Amendment, "double jeopardy bars reprosecution where the elements of the subsequent crime charged are identical to the elements of the original crime charged." *People v. Setzler,* 210 Mich.App 138, 139; 533 NW2d 18 (1995). Contrary to defendant's argument on appeal, the elements of the charge of criminal contempt for violating the PPO are not the same as those for the felony crimes of assault with intent to murder and first-degree home invasion. Specifically, in order to obtain a criminal contempt conviction, the prosecutor was required to prove that defendant was served with the PPO. This is not an element of either assault with intent to commit murder or first-degree home invasion. Moreover, to prove the PPO violation, the prosecutor was not required to prove that defendant intended to commit murder. Proof of that element, however, was necessary to obtain a conviction for assault with intent to commit murder. Further, to obtain a conviction for first-degree home invasion, the prosecutor was required to prove that defendant entered the victim's house with the intent to commit a felony or that he committed a felony or assault while in the house and that he was in the house without permission or because he committed a breaking and entering to get into the house. We find there was no federal double jeopardy violation because the elements of the subsequently charged crimes were not identical to the elements of the original charge of criminal contempt for violating the PPO. . . .

There is no doubt that the PPO violation and the felony charges on which defendant was subsequently prosecuted arose from the same criminal episode. However, as previously discussed, the PPO offense subjected defendant to the criminal contempt powers of the court. Punishment for contempt serves a different purpose than punishment for the underlying crime. *McCartney, supra,* 141 Mich.App 596. The primary purpose of the contempt power is to prevent harm to the effectiveness and power of the courts. *Contempt of Auto Club Ins Ass'n, supra,* 243 Mich.App 708. The underlying criminal statutes, which formed the basis for defendant's successive prosecution, punish the defendant for his criminal actions. See

14

*People v. Szpara,* 196 Mich.App 270, 272-273; 492 NW2d 804 (1992). There was no double jeopardy violation because the statutes at issue were not intended to prevent similar harms or evils.

*Jones*, No. 232864, at *2-4.

### A.   Multiple Prosecutions

The Michigan Court of Appeals applied the *Blockburger* test (as set forth in the *Setzler* decision) in determining that the offense of violating a PPO contained different elements from the felony offenses of assault with intent to commit murder and first-degree home invasion. The appellate court properly concluded that the charges of intent to commit murder and first-degree home invasion were not multiple prosecutions in violation of the Fifth Amendment's Double Jeopardy Clause.

The state court did not explicitly review the question of whether the aggravated stalking charge was a multiple prosecution of the PPO. However, this court concludes that under the *Blockburger* test, aggravated stalking is a separate crime from the violation of the PPO and that this felony charge did not constitute a multiple prosecution.   The elements of aggravated stalking are set forth in MCL § 750.411i(2), which provides in pertinent part as follows:

(2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

(a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.

(b) At least 1 of the actions constituting the offense is in violation of a condition of probation, a condition of parole, a condition of pretrial release, or a condition of release on bond pending appeal.

> (c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.
>
> (d) The individual has been previously convicted of a violation of this section or section 411h.

For purposes of the statute, "stalking" is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." M.C.L. § 740.411i(1)(e). A "course of conduct" is defined as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." *Id.* at § 750.411i(1)(a).

In the present case, the PPO prohibited petitioner from: entering the property where the victim lives; assaulting, attacking, beating, molesting, or wounding the victim; stalking the victim as defined in M.C.L. § 750.411h (the stalking statute) and M.C.L. § 750.411i (the aggravated stalking statute), which includes following the victim, confronting the victim in a public place or on private property, entering onto or remaining on property owned, leased or occupied by the victim, sending mail/other communications to the victim, contacting the victim by telephone, and placing an object on or delivering an objet to property owned, leased, or occupied by the victim; threatening to kill or physically injure the victim; interfering with the victims at her place of employment or engaging in conduct that impairs her employment relationship or environment; and purchasing or possessing a firearm. *See* PPO.

The trial court found that petitioner violated the PPO on May 17, 2000 by appearing at the victim's residence, telephoning the victim and assaulting the victim. PPO Trans. II at 49-50.

The court did not rely on a violation of the aggravated stalking statute as a basis for the PPO violation.

The criminal contempt conviction authorized by M.C.L. § 600.2950(23) contains elements not found in the offense of aggravated stalking. The criminal contempt statute requires the service or actual knowledge of the PPO, and a single violation of that PPO. On the other hand, the offense of aggravated stalking does not require the issuance of a PPO, and involves or requires more than a single act, i.e., the defendant must engage in a "course of conduct" involving "a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." M.C.L. § 750.411i(1)(a). Accordingly, the court concludes that the state court's exercise of its criminal contempt power to enforce a PPO pursuant to M.C.L. § 600.2950, and the state's subsequent prosecution of aggravated stalking, M.C.L. § 750.411i, constitute two separate offenses for purposes of double jeopardy. *See Dixon*, 509 U.S. at 696; *Blockburger*, 284 U.S. at 304; *Palazzolo*, 244 F.3d at 519.

### B.      Multiple Punishments

Next, petitioner fails to prove that his criminal convictions violate the constitutional prohibition against "multiple punishments" for the same offense. The question of whether punishments are "multiple" under the Double Jeopardy Clause is one of legislative intent "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). When "a legislature specifically authorizes cumulative punishment under two statutes . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). Here, the Michigan legislature has authorized multiple, cumulative punishments for all three criminal charges in addition

17

to the criminal contempt conviction arising from the PPO. *See Jones*, No. 232864 at *3. *See also, Smith v. Stegall*, No. 232864, 2003 WL 21434922 at *4 (E.D. Mich. June 18, 2003) ("[t]he Michigan Legislature has also specifically authorized cumulative punishment for both a PPO violation and aggravated stalking . . . as well as for both a PPO violation and first-degree home invasion"); *People v. Coones*, 216 Mich. App. 721, 727-28, 550 N.W.2d 600 (1996) (finding that "it is clear from this subsection [MCL § 750.411i(6)] that the Legislature intended to impose multiple punishments for both of defendant's convictions of aggravated stalking and criminal contempt for violating the temporary restraining order").  Finally, the Michigan Court of Appeals determined, in what appears to be a case of first impression, that the legislature authorized cumulative punishment for both a PPO violation and a conviction for the felony of assault with intent to commit murder.  The appellate court's conclusion is consistent with the rule expressed by the Michigan Supreme Court that "[s]tatutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments." *People v. Robideau*, 419 Mich. 458, 487, 355 N.W.2d 592 (1984). Accordingly, petitioner's three felony convictions did not constitute "multiple punishments" under the Double Jeopardy Clause.

The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).   Accordingly, petitioner is not entitled to habeas relief on this claim.

## IV.   Collateral Estoppel

Next, petitioner contends that the prosecution of first-degree home invasion, assault with intent to murder, and aggravated stalking were barred by the doctrine of collateral estoppel. Petition at ¶ 12.  The Michigan Court of Appeals rejected petitioner's claim on state law grounds without addressing the federal constitutional issue.  *See People v. Jones,* No. 232864, at *4.  The Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings. *Schiro v. Farley*, 510 U.S. 222, 232 (1994) "Collateral estoppel, or, in modern usage, issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in a future lawsuit. *Id.* (internal quotations omitted). If a defendant wants to preclude the government from relitigating an issue in a criminal proceeding, that defendant bears the burden of establishing the factual predicate for the application of the doctrine of collateral estoppel, i.e., that an issue of ultimate fact has once been determined in his favor.  *Id.*

> The collateral-estoppel effect attributed to the Double Jeopardy Clause, see *Ashe v. Swenson*, 397 U.S. 436 (1970), may bar a later prosecution where the Government has *lost* an earlier prosecution involving the same facts. But this does not establish that the Government "must . . . bring its prosecutions . . . together." It is entirely free to bring them separately, and can win convictions in both."

*United States v. Dixon*, 509 U.S. 688, 705 (1993) (emphasis in original).

Petitioner has not carried his burden to establish a federal constitutional violation on the collateral estoppel issue.  Petitioner did not prevail with respect to the PPO violation; rather, he pled guilty to that offense, was convicted and sentenced to 93 days in the county jail.  He has not demonstrated that an issue of ultimate fact has once been determined in his favor or that the government "lost" any earlier prosecution involving the same facts.  *See Schiro*, 510 U.S. at 232;

*Dixon*, 509 U.S. at 705.   Accordingly, the doctrine of collateral estoppel is inapplicable and petitioner is not entitled to habeas relief on this claim.

## V.   Jurisdiction of the Kalamazoo Circuit Court

Finally, petitioner argues that the Kalamazoo Circuit Court did not have proper jurisdiction to bring criminal charges against him. Petition at ¶ 12. The Michigan Court of Appeals disagreed:

> Finally, defendant argues that the court did not have jurisdiction to hear the felony charges. Defendant's argument is confusing and based on a misunderstanding of the proceedings. Both the criminal contempt hearing and the jury trial occurred in circuit court. Thus, defendant's argument that the district court did not have proper subject matter jurisdiction is misplaced. We note that the circuit court is a court of general jurisdiction, having original jurisdiction over *all* matters not prohibited by law. *People v. Goecke,* 457 Mich. 442, 458; 579 NW2d 868 (1998) (emphasis added). "Subject matter jurisdiction is presumed unless expressly denied by constitution or statute." *Id.* The circuit court in this case had jurisdiction over the contempt proceeding and defendant's jury trial on the felony charges.

*Jones*, No. 232864 at *5.

Petitioner's claim that the state trial court lacked jurisdiction to try his case raises an issue of state law.  "Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).  *See also, Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (claim that state circuit court lacked jurisdiction over certain charges rested solely on an interpretation of state law and was therefore not cognizable on federal habeas review); *U.S. ex rel. Roche v. Scully*, 739 F.2d 739, 741 (2d Cir.1984) (observing that "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law").

Accordingly, petitioner is not entitled to habeas relief on this claim because it is not cognizable on federal habeas review.

### VI.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  April 13, 2007                                      /s/ Hugh W. Brenneman, Jr.
                                                                        Hugh W. Brenneman, Jr.
                                                                        United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).